IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES D. PATTERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:20-cv-00259-ECM |
| | ) | (WO) |
| JOHNSON'S HEAVY SALVAGE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

## I.   INTRODUCTION

Plaintiff Charles P. Patterson ("Patterson") filed this suit against Johnson's Heavy Salvage, Inc. ("Johnson Salvage") on April 15, 2020. (Doc. 1). Patterson alleges breach of contract, breach of implied contract, breach of UCC contract for sale of goods, unjust enrichment, and goods had and received. Process was served on Robert Johnson—the registered agent of Johnson Salvage—on July 23, 2020. (Doc. 8). Thereafter, no answer was filed, and the Plaintiff filed an application to the Clerk of Court for an Entry of Default on October 8, 2020. (Doc. 9). The Clerk completed the Entry of Default on October 9, 2020. (Doc. 10). The Entry of Default was mailed to the Defendant, but returned by USPS with the notation, "Return to Sender, Insufficient Address, Unable to Forward."

Now pending before the Court is the Plaintiff's motion for default judgment pursuant to Fed. R. Civ. P. 55. (Doc. 11). For the following reasons, the Plaintiff's Motion for Default Judgment is due to be GRANTED.

1

## II.   JURISDICTION

The Court exercises federal subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a)(1).

Personal jurisdiction and venue are uncontested.

## III.   BACKGROUND

Patterson is a citizen of Alabama who owns a trucking company.  Over the years, Patterson accumulated salvage material from numerous trucks and trailers.  He used those materials on other operable equipment, and he stored the material on his property (the "Collection Site").

Patterson alleges that Johnson Salvage approached him in 2019 about purchasing salvage materials from the Collection Site.  After negotiations, the Parties agreed that Johnson Salvage would pay $100,000 to take all salvage equipment other than farm equipment from the Collection Site.  Johnson Salvage agreed to provide a down payment of $20,000 and a second payment of $80,000 within thirty days of the first.  In return, Johnson Salvage would "remove[] all of the salvage, including tires, pieces, and parts, from the Collection Site other than the farm salvage equipment." (Doc. 1 at 3).  The contract was to be completed within one year.

On or about July 12, 2019, Patterson received and deposited the first check for $20,000.  Johnson Salvage began removing materials from the Collection Site.  On or about thirty days later, Patterson received the second check for $80,000 from Johnson Salvage.  However, when Patterson tried to deposit the check, it was returned for insufficient funds ("NSF").  Patterson subsequently contacted Johnson Salvage about the issue, and he was

2

informed that the "NSF" was due to a bank error.  Patterson attempted to deposit the check again, but it was not paid out.  Instead, he received a message which read, "STOP PAYMENT."  Johnson Salvage continued to remove materials from the Collection Site in the meantime.

In October 2019, Patterson again contacted Johnson Salvage regarding the check. Johnson Salvage's representative told him he would receive a replacement check once the work was completed.  Johnson Salvage then departed the Collection Site later that month. Johnson Salvage did not remove all the materials it had agreed to take—it took some salvage materials but left behind others, such as tires scattered about the Collection Site— and did not pay Patterson the additional $80,000.  Patterson demanded full performance and payment but did not receive either.  In a letter dated February 3, 2020, Patterson again demanded full performance and payment.  Neither has occurred to date.

Patterson filed this suit on April 15, 2020.

## IV.   LEGAL STANDARD

It is well-settled that a "district court has the authority to enter default judgment for failure . . . to comply with its orders or rules of procedure." *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985).  An entry of default must precede an entry of default judgment. When a defendant "has failed to plead or otherwise defend" against claims, and the plaintiff demonstrates that failure, the clerk must enter the defendant's default. FED. R. CIV. P. 55(a). After entry of default, the plaintiff "must apply to the court for a default judgment." FED. R. CIV. P. 55(b)(2).  The court may, but is not required to, hold a hearing before entering a default judgment.  Further, "[g]iven its permissive language, Rule 55(b)(2) does not require

a damages hearing in every case." *Giovanno v. Fabec*, 804 F.3d 1361, 1366 (11th Cir. 2015).

A default judgment may be entered where a defendant "has failed to plead or otherwise defend as provided by these rules." FED. R. CIV. P. 55(a).  However, the Eleventh Circuit has a "strong policy of determining cases on their merits" and "therefore view[s] defaults with disfavor." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003).  Default judgments are appropriate only when the adversary process has been halted because of an unresponsive party. *Flynn v. Angelucci Bros. & Sons, Inc.*, 448 F. Supp. 2d 193, 195 (D. D.C. 2006).

A defendant's failure to appear and an entry of default by the Clerk do not automatically entitle the plaintiff to default judgment; courts look instead to the contents of the Complaint to determine liability.  So an entry of default is not "an absolute confession" but rather "an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability." *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004). *See also Giovanno*, 804 F.3d at 1366 ("When a defendant defaults, he 'admits the plaintiff's well-pleaded allegations of fact.'") (quoting *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1106 (11th Cir. 2015) (quotation marks omitted)); *Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1316 (M.D. Fla. 2005) ("The defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint state a claim for relief.").

Therefore, "the allegations must be well-pleaded in order to provide a sufficient basis for the judgment entered." *De Lotta v. Dezenzo's Italian Rest., Inc.*, 2009 WL

4349806, at *2 (M.D. Fla. 2009) (citing *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009)).   A complaint is "well-pleaded" when it satisfies the requirements set out in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Specifically, "the factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555.   "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*

## V.   DISCUSSION

Johnson Salvage has failed to file a response or acknowledge the pending lawsuit, bringing a halt to Patterson's litigation.   The Clerk has completed an Entry of Default. Accordingly, the Court reviews the claims in this case to determine whether default judgment is appropriate. *See Flynn*, 448 F. Supp. 2d at 195.   The Court will take each of Patterson's allegations in turn to determine whether the complaint is well-pleaded and establishes liability on each Count.

### A. Counts One and Three

Patterson brings two iterative claims: Count One—breach of contract—and Count Three—breach of UCC contract for sale of goods.   The Court finds that Patterson sufficiently established liability for breach of contract under either Count.

Patterson alleges that Johnson Salvage entered into a contract with Patterson in 2019, but Johnson Salvage subsequently breached that contract when it failed to pay the entirety of the contract and failed to remove all of the materials from the Collection Site. In Alabama, "to recover on a breach-of-contract claim, a party must establish: (1) the existence of a valid contract binding the parties; (2) the plaintiff's performance under the

contract; (3) the defendant's nonperformance; and (4) damages." *Capmark Bank v. RGR, LLC*, 81 So. 3d 1258, 1267 (Ala. 2011); *see also Jarvis v. TaylorChandler, LLC*, 480 F.Supp.3d 1339, 1364 (Aug. 19, 2020) (same).

### 1.   *The existence of a valid, binding contract*

As previously discussed, "[w]hen a defendant defaults, he 'admits the plaintiff's well-pleaded allegations of fact.'" *Giovanno*, 804 F.3d at 1366.  The Complaint in this case successfully sets out the existence of a binding, valid contract.  As an initial matter, Patterson specifically alleges that he formed a contract with Johnson Salvage when the Parties agreed that Johnson Salvage would pay Patterson in money and labor for the materials at Patterson's Collection Site. (Doc. 2 – 3).  Johnson Salvage can be assumed to admit these well-pleaded facts.

But the type of contract is less clear from the face of the Complaint.  The contract here was a hybrid contract: it was for the sale of goods—the materials—under Article 2 of the Uniform Commercial Code ("UCC"), as well as for services—the removal of the materials. *See BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1329 (11th Cir. 1998). As adopted from the UCC, "goods" in Alabama "means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale . . . ." ALA. CODE § 7-2-105.  And, while "[a] contract that is exclusively for services . . . is not governed by Article 2," courts apply the "predominant factor" test when reviewing "hybrid" contracts for both goods and services. *Id.*  "Under this test, the court determines 'whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (e.g., contract with artist for

painting) or is a transaction of sale, with labor incidentally involved (e.g., installation of a water heater in a bathroom).'" *Id.* at 1329–30 (quoting *Bonebroke v. Cox*, 499 F.2d 951, 960 (8th Cir. 1974)). Courts look to the language of the contract, the circumstances surrounding the contract, the way the transaction was billed, and for movable goods themselves to determine the predominant factor. *Id.* at 1330.

Here, the hybrid contract is predominantly focused on the sale of goods, not services. The circumstances surrounding the contract suggest that Johnson Salvage specifically wanted to purchase *materials* from Patterson, and the removal of the materials was part of the payment. The materials themselves were movable truck parts—goods under the UCC. In a letter dated February 3, 2020, Patterson's lawyer contacted Johnson Salvage about its "right to remove all equipment and parts, including tires." (Doc. 11-2 at 6). The letter adds that the Collection Site "is littered with the remaining parts and tires which was [sic] to be removed by your firm as part of the agreement and which creates a nuisance and possible hazard if it remains on the site." (*Id.*). Therefore, the services in question functioned as part of the payment for the materials, and the contract is predominantly for the sale of goods.

However, because the hybrid contract included the sale of goods for more than $500—$100,000, here—, the contract is governed by the Statute of Frauds, adopted under ALA. CODE § 7-2-201. The statute of frauds reads,

> [e]xcept as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made

7

> between the parties and signed by the party against whom
> enforcement is sought or by his authorized agent or broker.

ALA. CODE § 7-2-201(1).  Therefore, the contract in this case should be in writing to satisfy

the statute of frauds.  A written contract has not been submitted to the Court.  Nor does the

face of the Complaint make clear whether a written contract existed. (Doc. 1 at 2–4).

Yet several independent exceptions waive the writing requirement in this case.

First, "[b]etween merchants if within a reasonable time a writing in confirmation of the

contract and sufficient against the sender is received and the party receiving it has reason

to know its contents, it satisfies the requirements of subsection (1) against such party unless

written notice of objection to its contents is given within 10 days after it is received." ALA.

CODE § 7-2-201(2).  Here, Patterson and Johnson Salvage are merchants in the sale of

salvaged parts, Johnson Salvage has received written confirmation of the contract several

times from Patterson, (*see*, *e.g.*, doc. 11-2 at 6), and Johnson Salvage never objected at any

time, let alone within ten days of receipt.

Second, the doctrine of part performance can waive the writing requirement.

Johnson Salvage provided a $20,000 deposit, (doc. 11-2), moved materials from the

Collection Site, and repeatedly assured Patterson that the $80,000 check would eventually

go through.  In response, Patterson executed his side of the agreement: he opened the

Collection Site for Johnson Salvage to take materials.  These activities constitute part

performance, waiving the statute of frauds requirement. *Ex parte Ramsay*, 829 So.2d 146,

155 (Ala. 2002) ("A contract is executed, and not voided by the Statute of Frauds, if the

plaintiff has fully performed his obligation to the defendant and sues the defendant to obtain the defendant's performance or the completion of the defendant's performance.").

Finally, Johnson Salvage admits the facts of the Complaint with the entry of default, thereby admitting the existence of a contract. "A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable . . . If the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made . . . ." ALA. CODE § 7-2-201(3)(B). All three exceptions waive the writing requirement in this case.

Accordingly, the Court finds that a binding, valid, and enforceable contract formed between Patterson and Johnson Salvage.

2. *The Plaintiff's performance, the Defendant's nonperformance, and damages*

The final elements for breach of contract can quickly be addressed. Patterson alleges that he performed under the contract: he allowed Johnson Salvage to remove materials from his land. In response, Johnson Salvage only performed in part—it removed some of the materials from the Collection Site and supplied a deposit of $20,000. Finally, Patterson alleges damages of $80,000 for the unpaid check, $25,000 for the removal of the remaining materials, plus interest and costs.

Overall, Patterson has alleged sufficient facts to establish Johnson Salvage's liability for breach of contract under Count One and for breach of contract for the sale of goods under Count Three. Default judgment is due to be GRANTED as to Counts One and Three.

**B. Count Two – Breach of Implied Contract**

An implied contract is contract which "arise[s] by virtue of the acts or conduct of the parties rather than by express agreement." *Berry v. Druid City Hospital Bd.*, 333 So.2d 796, 798 (Ala. 1976). The Court is satisfied that an express contract existed in this case. Therefore, Count Two fails.

Accordingly, default judgment is due to be DENIED as to Count Two.

**C. Count Four – Unjust Enrichment**

Patterson alleges unjust enrichment in Count Four. "One is unjustly enriched if his retention of a benefit would be unjust." *Jordan v. Mitchell,* 705 So.2d 453, 458 (Ala. Civ. App. 1997) (citing *Restatement of Restitution: Quasi Contracts and Constructive Trusts,* § 1, Comment c. (1937)). "To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Matador Holdings, Inc. v. HoPo Realty Investments, LLC*, 77 So.3d 139, 145 (Ala. 2011) (cleaned up). Based on the facts of the complaint, Johnson Salvage was unjustly enriched. First, Johnson Salvage took numerous salvaged parts at the Collection Site. Second, the parts were provided by Patterson. Third, Johnson Salvage never paid Patterson the full $100,000 it had agreed to pay. Patterson had a reasonable expectation of compensation for the materials Johnson Salvage took.

Furthermore, Alabama courts also consider whether the enrichment is *unjust* as follows:

> [r]etention of a benefit is unjust if (1) the donor of the benefit
> . . . acted under a mistake of fact or in misreliance on a right or
> duty, or (2) the recipient of the benefit . . . engaged in some
> unconscionable conduct, such as fraud, coercion, or abuse of a
> confidential relationship. In the absence of mistake or
> misreliance by the donor or wrongful conduct by the recipient,
> the recipient may have been enriched, but he is not deemed to
> have been *unjustly* enriched.

*Welch v. Montgomery Eye Physicians, P.C.,* 891 So.2d 837, 843 (Ala. 2004) (quoting *Jordan v. Mitchell,* 705 So.2d at 458). Here, the basis of Patterson's unjust enrichment claim is that the recipient of the salvage materials acted in a fraudulent manner or abused their business relationship. The complaint reads, "Johnson Salvage failed to honor the terms by which it obtained the salvage goods from Patterson." (Doc. 1 at 7). The Complaint alleges that Johnson Salvage gave Patterson a check for $80,000, but Patterson repeatedly had issues cashing the check. In the meantime, Johnson Salvage took the materials it wanted from the Collection Site, left behind other materials, and then never paid Patterson the full amount, all while claiming the check would soon go through. These facts sufficiently establish fraudulent behavior and therefore liability for unjust enrichment.

Accordingly, default judgment is due to be GRANTED as to Count Four.

### D. Count Five – Goods Had and Received

Patterson's fifth count is for "goods had and received." This claim is redundant. Although distinct from an unjust enrichment claim, this claim is similarly analyzed: "[t]he essence of the theories of unjust enrichment or money had and received is that a plaintiff can prove facts showing that defendant *holds* money which, in equity and good conscience, belongs to plaintiff or *holds* money which was improperly paid to defendant because of

mistake or fraud." *Hancock-Hazlett Gen. Constr. Co. v. Trane Co.*, 499 So.3d 1385, 1387 (Ala. 1986) (emphasis in original).  However, a claim for money—or goods, in this case— had and received "is essentially a derivative claim of fraud." *Dickinson v. Cosmos Broadcasting Co., Inc.*, 782 So.2d 260, 266 (Ala. 2000).  Since the Court has already recognized that the complaint establishes fraudulent behavior by Johnson Salvage, this Count "is completely derivative of the fraud claims, and thus cannot stand as a separate state-law claim." *Id.*

Accordingly, default judgment is due to be DENIED at to Count Five.

### E.  Damages

The Plaintiff has established in the Complaint and through evidence submitted in support of his motion for default judgment that he is entitled to damages in the amount of $110,457.25 plus additional accrued interest at the rate of $13.15 per day from October 2, 2020, until the entry of judgment, plus costs.

## VI.    CONCLUSION

Accordingly, for the reasons as stated and for good cause, it is

ORDERED that the Plaintiff's motion for default judgment, (doc. 11), is GRANTED on Counts One, Three, and Four.  The motion is DENIED as to Counts Two and Five.  The Plaintiff is awarded damages in the amount of $110,457.25 plus additional accrued interest at the rate of $13.15 per day from October 2, 2020, until the entry of judgment, plus costs.

Costs are taxed against the Defendant.

A separate final judgment will be entered.

DONE this 27th day of May, 2021.

_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE